IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-02-633-01 |
| | § | |
| JOHN M. BEAIRD | § | |

# **MEMORANDUM AND ORDER**

The parties have filed various motions in this case pertaining to restitution obligations imposed on Defendants in this case. Beaird opposes much of the relief sought. The Court addresses the issues by topic rather than by individual motion.

## **PROCEDURAL BACKGROUND**

The Court entered a criminal judgment against Defendant John Beaird on October 31, 2003 [Doc. # 83]. The Court, by Order issued April 23, 2004 [Doc. # 118], made a clerical modification to the Judgment directing the Clerk's Office not to distribute restitution funds collected from Defendant until Defendant's appeal had been resolved. The Court entered judgment against Defendant Rudy Rudolph on October 31, 2003 [Doc. # 84], and filed an amended judgment on November 21, 2003 [Doc. # 90]. These judgments now are final.[1] Defendants are jointly and severally liable for restitution tolling $465,806. A $100 special assessment was imposed against each Defendant. The judgments list Camden Capital

---

[1] Rudolph did not appeal and his judgment became final in 2004. Beaird appealed unsuccessfully to the Fifth Circuit Court of Appeals and the United States Supreme Court recently denied *certiorari*. *See* Letters [Docs. # 192-1 and # 192-2]. Thus, Beaird's judgment is now final.

Mortgage, Inc. ("Camden"), Saxon Mortgage Inc. ("Saxon"), and Chicago Title Insurance Company ("Chicago Title") as parties entitled to restitution. *See* Docs. # 83, # 90. The judgments provide restitution to Camden of $267,906, to Saxon of $39,400, and to Chicago Title of $158,500. *Id*. These parties collectively are referred to herein as the "Judgment Creditors."

## APPLICABLE LEGAL STANDARDS

The pertinent federal restitution statute is the Victim and Witness Protection Act, as amended. That Act provides in pertinent part:

> Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

18 U.S.C. § 3664(e). "'[J]ustice requires' that the burden of establishing any offset to a restitution order should fall on the defendant. *United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998) (citing 18 U.S.C. § 3664(e) (Supp.1997) ("The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.")).

An order of restitution must be limited to the loss stemming from the specific conduct supporting the conviction. *United States v. Calbat*, 266 F.3d 358, 365 (5th Cir. 2001) (citing *United States v. Hughey*, 147 F.3d 423, 437 (5th Cir.1998); 18 U.S.C. § 3663)). Section 3664(j)(2) of the Victim and Witness Protection Act, also provides that "[a]ny amount paid

to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim" in any state or federal civil proceeding. *Calbat*, 266 F.3d at 365 "The availability of [ ] an offset [from insurance, a civil settlement, or from other sources] depends upon the payment made in the settlement, whether the claims settled involved the same acts of the defendant as those underlying his criminal conviction, and whether the payment satisfies the penal purposes the court sought to impose." *Id.* (citing *United States v. All Star Indus.*, 962 F.2d 465, 477 (5th Cir. 1992)). "It is the defendant's burden to establish an offset to a restitution order." *Id.* (citing *Sheinbaum*, 136 F.3d at 449).

## ANALYSIS

**Assignment of Interests and Camden's Standing**.– Camden represents that Saxon and Chicago Title have assigned to Camden their interest to restitution. *See* Joint Motion of Restitution Judgment Creditors, [etc.] [Doc. # 133 (available electronically at Exhibit B to Doc. # 146)].[2] The Judgment Creditors accordingly request an order amending or modifying Defendants' judgments to provide that all restitution payments and applicable interest (from October 31, 2003) be paid to Camden. The Government does not oppose this request. Beaird, however, does oppose this relief (*see* Doc. # 170) and argues that Camden is due only $267,906, because that is the expressly set forth sum in the final judgments as

---

[2] While Camden submitted no documentary proof of these assignments, Camden's filing of the Joint Motion with a certificate of service showing service on Saxon and Chicago Title's attorneys establishes this fact for present purposes. There is no reason for the Court to question this representation. Nevertheless, the Court will require Saxon and Chicago Title to receive copies of all accountings and this Order, so these parties can ensure their interests are protected.

Camden's restitution. Beaird's contentions are unavailing. First, Beaird does not meaningfully challenge with evidence or argument the assertion that Saxon and Chicago Title in fact assigned to Camden their respective rights to collect restitution under Defendants' judgments.

Beaird apparently instead contends that the assignments by Saxon and Chicago Title are not effective to increase Camden's rights of recovery in this case because the assignments are unlawful modifications of his judgment, citing *McClure v. Ashcroft*, 335 F.3d 404, 411 (5th Cir. 2003), and cases cited therein. Beaird characterizes the Judgment Creditors' joint request as a challenge to the sentence already imposed and contends that they, and Camden in particular, lack standing to change these sentences. These arguments are legally and factually unfounded. The Court construes the Judgment Creditors' motion, despite the verbiage employed by counsel, to be a request to forward all payments of restitution monies to Camden, not in fact to alter or modify the total amounts the Court ordered in restitution.[3] The Judgment Creditors, through Camden, merely have reported to the Court their agreement giving Camden all rights to collect any restitution paid in this case. The Court construes the Judgment Creditors' motion as merely a way to inform the Court how to prepare checks for restitution payments due under Defendants' existing judgments. The authorities Beaird cites therefore do not apply here.[4] Nothing in Defendants' judgments prevent the Judgment

---

[3] Camden's choice of phrasing of the relief requested was inaccurate. To the extent Camden or the Judgment Creditors in fact seek alteration of the judgments, which are final, their request is denied.

[4] In *McClure v. Ashcroft*, 335 F.3d 404 (5th Cir. 2003), the Fifth Circuit explained that "[t]he standing doctrine protects final judgments from third-party collateral attacks," including
(continued...)

Creditors from assigning among themselves the right to collect restitution. These assignments are not improper modifications of the judgments.

The Court accordingly will **grant** the Judgment Creditors' joint request for an order directing that all restitution monies be forwarded to Camden. This is **not** a modification or amendment the Defendants' judgments *per se*.[5] Rather, this is merely the implementation of the three Judgment Creditors' assignment agreement(s). To ensure that the Government, Defendants, and other parties in interest are kept abreast of the restitution payments in this case, the Clerk of the Court will send promptly to Saxon, Chicago Title and Defendants copies of this Order and proof of payment of restitution made to Camden.

**Release of Bond Funds.**– Camden has moved for release of Rudolph's cash bond allegedly posted in this case and payment of those funds to Camden in partial satisfaction of the restitution obligation in this case. *See* Restitution Judgment Creditor Camden Capital Mortgage, Inc.'s Motion for Release of Bond Funds of Rudy Rudolph [Doc. # 146]. No

---

[4] (…continued)
precluding victims from challenging a criminal sentence. *Id.* at 412 (citing *United States v. Mindel*, 80 F.3d 394 (9th Cir.1996) (beneficiary of criminal restitution order has no standing to challenge modification of sentence to rescind restitution order); *United States v. Johnson*, 983 F.2d 216 (11th Cir.1993) (beneficiary of criminal restitution order has no standing to challenge revocation of probation when restitution not paid); *United States v. Kelley*, 997 F.2d 806, 807-08 (10th Cir.1993) (victim has no standing to appeal denial of motion to intervene in criminal proceeding); *United States v. Grundhoefer*, 916 F.2d 788, 791 (2nd Cir.1990) ("[t]he direct, distinct, and palpable injury in a criminal proceeding plainly falls only on the defendant who is being sentenced"). These authorities apply when a victim/restitution creditor seeks to alter or enforce the judgment substantively. That is not the circumstance here.

[5] Camden cites no authority, and the Court is not aware of any, permitting a formal alteration of a judgment under circumstances such as these. The Court simply issues this order directing the Clerk of the Court to pay all restitution monies to Camden to implement a lawful agreement among the judgment creditors.

opposition to this request has been filed. However, the Court's records do not reflect the collection of any monies for a pretrial release bond for Rudolph in this case. Rather, the Court applied the bond posted on Rudolph's behalf in Florida.[6] This motion therefore will be **denied**.

Camden also seeks release of Beaird's $10,000 cash bond and payment of the funds to Camden in partial satisfaction of the restitution obligation in this case. *See* Restitution Judgment Creditor Camden Capital Mortgage, Inc.'s Motion for Release of Bond Funds of John M. Beaird and Rudy Rudolph [Docs. # 165, # 166].[7] Rudolph understandably did not file any opposition to this request, but Beaird did. Beaird contended that this Court was without jurisdiction to grant the motion because, when it was filed, his case was on appeal. *See* Respondent John Beaird's Reply to Movant Camden Capital's Motion for Release of Bond Funds of John Beaird [Doc. # 167]. The Court accordingly waited until Beaird's appeal was fully resolved before ruling on this motion. That time has come. *See* Letters [Docs. # 192-1 and #192-2]. Camden's motion will be **granted** as to Beaird's bond and denied, for the reasons stated above, as to Rudolph. Camden is entitled to payment of the $10,000 in the Court's Registry constituting Beaird's cash bond.

**Requests for Accountings and Credits**.– Beaird has filed various motions for an accounting of restitution received by the Court and sums forwarded to Camden [Docs. # 168,

---

[6] It appears that Rudolph, through his attorney, Keith Watson, Esq., posted a $2,500 bond in Criminal Case No. H-00-342. That bond was returned to Mr. Watson by order of Judge Hoyt.. *See* Order, dated April 9, 2001 [Doc. # 56] in Crim.Case No. H-00-342.

[7] As to Rudolph, this request simply repeats Camden's earlier motion [Doc. # 146].

# 170, # 190, and # 191; *see also* Docs. # 171, # 175].[8]  Beaird also requests credit for various items relating to property Co-Defendant Rudolph or his wife owned in the past or now own.  Camden largely opposes this relief sought [Docs. # 169, # 174, # 178].

### ***Promissory Note from Church on the Rock Katy, Inc.***

– Beaird first contends that, through his personal investigation, he discovered and reported to Camden and the Government that Rudolph had hidden the fact that he, his wife, and/or an affiliated entity owned land, and that they had sold that asset for substantial consideration.  It is true that Beaird was able to provide information sufficient to enable Camden and the Court to locate the land and the associated transaction documents.  At a revocation hearing concerning Rudolph's supervised release in Rudolph's first criminal case, No. H-00-342, Judge Kenneth Hoyt determined that Rudolph and/or his wife (or an affiliated entity) had sold land that Rudolph had not disclosed to the Court or the Probation Office in that case or the one at bar.  The evidence established that Rudolph's wife received a promissory note dated June 12, 2003 (the "Note"), with a face value of $400,000, payable by "Church on the Rock Katy, Inc." (the "Church"), to "Kathy Rudolph, d/b/a Promise Land Development – Investment."  Judge Hoyt ordered that the Note and all interest and the collateral securing the Note be

---

[8]   In the last two motions, Beaird frames his requests a little differently.  He seeks declaratory judgments giving him "credit" in this case for payments Camden received in the sums of $28,403.12 and $28,012.86.  He also seeks a $400,000 credit against his restitution obligation for the face amount of a promissory note described in the text of this Order hereafter.  Independent of the merits of these motions, there is no evidence in the record that Beaird served Camden with his motions for declaratory judgment.  Beaird has been warned on earlier occasions that he MUST serve all parties, including Camden, with all documents he files.  Defendant's failure to do so is grounds for denial of his motions.  However, in the interest of justice the Court reaches the merits of the pending motions.

assigned to Camden.[9] Beaird asserts that the Church has made two interest payments, each for $40,000 (in June 2004 and June 2005). Beaird seeks credit against his own restitution obligation for the full value of the Note and these interest payments, which he contends totals at least $456,415.98. Beaird supports his argument with the contention that the $400,000 Note is a fully performing negotiable instrument that is collateralized by real estate valued in excess of $1,000,000, *i.e.*, land valued at 2½ times the face obligation of the Note. Beaird asserts—without any evidence other than his conclusory, self-interested personal opinion—that Camden could sell the Note on the secondary market at a price in excess of the Note's face value because the Note carries a 7% rate of interest, a rate materially higher than market interest rates. Beaird deduces also that, because of the high value of the Note, Camden has received an egregious overpayment of his restitution obligation in violation of his Fifth Amendment Due Process rights.

---

[9] *See* Order signed March 10, 2004 [Doc. # 83 in Criminal Case No. H-00-342]; First Amended Order signed April 2, 2004 [Doc. # 87 in Criminal Case No. H-00-342]; and Order signed June 7, 2005 [Doc. # 137 in Criminal Case No. H-00-342]. It appears that Judge Hoyt assigned the Note to Camden, rather than to Fiserv Solutions, Inc. ("Fiserv"), the victim in Crim. Case No. H-00-342, in an exercise of his equitable powers because it was Beaird, Co-Defendant in Rudolph's second case (the one at bar), who informed the Government about the existence of the land and Rudolph's attempted transfer, and thus it was appropriate that Beaird receive credit on monies paid on that Note. In addition, the restitution obligation in this case ($465,809), is more than ten times larger than the obligation in Case No. H-00-342 ($34,757.50). Further, in Case No. H-00-342, the co-defendant, Ismael Hernandez, has been making regular installment restitution payments that the Clerk of Court has forwarded to Fiserv. The balance due to Fiserv as of April 6, 2006 is $21,987.50.

It is also noted that the judges presiding over the two criminal cases against Rudolph have agreed that there was a clerical error in the order directing the Clerk's Office's allocation of payments received on the Note. These payments were incorrectly allocated to Case No. H-00-342. They should have been credited to the case at bar, the case in which Camden is a judgment creditor.

Camden strenuously contests each of these points. Camden denies that it should be deemed to have received payment equal to the face value of Note or the putative value of the collateral securing the Note. Camden also contests the amount of the interest payments that have been made. Camden has submitted an affidavit of Larry M Karren, Camden's Chief Financial Officer, sworn to August 24, 2005, explaining that Camden has received two checks in the amounts of $28,403.12 and $28,012.86 from the Clerk of Court in payment of restitution. Mr. Karren states that these sums were interest payments made by the Church on the Note. The Court's investigation reveals that these payments actually comprise both the interest payments made by the Church on the Note *plus* interest earned while the funds were held in the Court's Registry. Camden, through Mr. Karren, also explains that the Note has not yet matured, and no funds have been collected on the Note's $400,000 principal balance. Further, according to Camden's information, as of August 2005, the Church was considering contesting its liability for payment on the Note due to alleged fraud by Rudolph when he sold the property to the payor. Camden further explains that, to purchase the property, the Church gave three forms of consideration: $232,000 in cash paid to the Rudolph, a second-lien owner-financed $400,000 note dated June 12, 2003 (the Note), and a first lien promissory note for $450,000 payable to Tradition Bank. Beaird has submitted no evidence to contradict these points.

Beaird has not met his burden to establish that he is entitled to credit for the face value of the Note or the value of the collateral for the Note, as he requests. He cites no authority requiring the Court to give him credit for assignment of an unmatured, potentially contested promissory note. Indeed, the Note is a contingent asset dependent upon either the

Church continuing to make payments, or default under the Note, foreclosure on the second lien Deed of Trust on the collateral, and liquidation of the property in such a manner that Camden actually collects some of the proceeds. There is no method to calculate the value of the second lien founded on the Note.

Beaird (and Rudolph) will receive credit against their restitution obligation for every dollar paid on the Note, whether for interest or principal. Until payments are received by the Clerk of the Court from the obligor on the Note, Defendants in this case are not entitled to and will not receive credit towards their restitution obligation in this case.

***Value of Rudolph's or His Wife's Florida Property.*** – Beaird also asserts that Co-Defendant Rudolph (and his wife) spent $700,000 of the funds allegedly garnered from the criminal mortgage fraud scheme in the indictment in this case to buy a house in Hollywood, Florida (the "Florida Property"). That house is the subject of a lien issued by Judge Hoyt and filed in this and Rudolph's earlier criminal case. Judge Hoyt assigned the lien to Camden.[10] Beaird also indicates that the Rudolphs may have sold the house. Beaird wants credit against his restitution obligation for the putative proceeds of the Florida Property. It appears that the federal lien is subordinate to one or more liens arising from other debts owed

---

[10] The lien was entered in both of Rudolph's criminal cases. *See* Crim. Case No. 00-342: Order of Lien, signed July 30, 2004 [Doc. # 103], and Amended Order of Lien, signed August 9, 2004 [Doc. # 105]; Crim. Case No. 02-633: Order of Lien, signed July 30, 2004 [Doc. # 135], Amended Order of Lien, August 9, 2004 [Doc. # 139], and Order of Lien, signed Oct. 12, 2004 [Doc. # 141]. It is unclear from the record what funds were used to buy the Florida Property.

by the Rudolph. Thus, if the holder of the first lien forecloses on its interest, Camden is at risk that it will receive nothing on the Note.[11]

The Court agrees that no credit for the Florida Property is due at this time against Beaird's and Rudolph's restitution obligations in this case. Beaird provides neither evidence that the Florida Property has been sold, nor any evidence of the property's value. Further, Camden provides evidence that Camden's lien likely is a second or third lien behind liens of a bank and/or an individual named David Billitier.[12] *See and compare United States v. Holley*, 23 F.3d 902, 915 (5th Cir. 1994) (credit for return of the collateral on a loan is appropriate if the property is transferred to the lender because the lender then had the power to dispose of the property and receive compensation). Camden also submits evidence that Rudolph's wife filed notice of a lien on the Florida Property purportedly issued by a "Common Law Court" (Exhibit B to Camden's Response [Doc. # 169], which appears to violate a prohibition issued by Judge Hoyt on April 2, 2004, *see* Order [Doc. # 87 in Criminal Case No. H-00-342]; that Mr. Billitier (apparently the seller of the Florida Property to the Rudolphs) has instituted foreclosure proceedings in Broward County, Florida; and that on July 21, 2005, Rudolph filed a "Suggestion of Bankruptcy" in the foreclosure judicial proceedings, *see* Exhibit D to Camden's Response [Doc. # 169].[13] These circumstances

---

[11] Camden correctly points out also that if Rudolph sold the Florida house, that conduct squarely would contravene Judge Hoyt's orders that the Rudolphs not alienate the property.

[12] It is unclear if the debt is due to World Savings Bank (*see* Doc. # 169, at 4) or Tradition Bank (*see* Doc. # 178, at 2 n.2). The status of that loan is not in the record.

[13] The bankruptcy case number listed in the Broward County Court docket sheet is Case No. "05-24522 BKC-PGH." It is unclear what court or district, if any, the bankruptcy case was
(continued…)

complicate Camden's collection efforts from the Florida Property, to say the least. It therefore is unrealistic and inequitable to give Beaird credit against a restitution obligation until proceeds of the Florida Property are actually received by the Court. Beaird's request that he receive credit for rights Camden may have under the court-ordered lien against Rudolph's Florida Property is **denied**.

*__Settlement Funds.__* – Beaird also seeks a credit against his restitution obligation for monies collected by Camden from other sources, such as monies Camden may have received from Chicago Title in settlement of civil litigation related to this case. *See, e.g.,* Doc. # 171, at 7. This relief is **denied**. *See United States v. Sheinbaum*, 136 F.3d 443, 448 (5th Cir. 1998); *United States v. Karam*, 201 F.3d 320, 328-29 (4th Cir. 2000). The claims Camden asserted in its civil litigation were more wide-ranging and sought damages well beyond the single fraud count to which Beaird and Rudolph, respectively, pleaded guilty and on which their restitution was based. *See* Camden's Fourth Amended Petition and Ninth Amended Third-Party Petition ("Petition"), Cause No. 2000-37284 in the 127th Judicial District of Harris County, Texas, Exhibit A to Doc. # 178. The Court ordered only limited restitution for specified damage and a portion of Camden's attorneys' fees and expenses incurred while helping the Government prosecute this case. Beaird has not met his burden to show that Camden obtained in the civil settlement compensation for the same damages that were the basis of the restitution ordered in this case.

---

13   (…continued)
     filed in.

***Current Status of Restitution Collected and Paid through the Court to Camden.*** – Beaird seeks an accounting of the sums Camden has received through the Court.[14] This request will be **granted**. Camden does not oppose an accounting by the Court. All parties are entitled to this relief. The Court will order that the Clerk's Office provide promptly to all interested parties an accounting of monies paid through the Registry of the Court. Hereafter, the Court will send to all interested parties at least once per year an accounting of the monies received and forwarded to Camden.

The Court has received to date $76,699.15 in restitution payments in this case. So far, $66,479.15 has been paid to Camden.[15] The balance ($10,220.00) will be forwarded promptly. Hereafter, at least once a year, the Court will forward to Camden all monies received by the Court on the Note and from Beaird directly on account of this case.[16]

---

[14] Camden complains, in somewhat of a non-sequitur, that Beaird has made no restitution payments so far. Beaird, through deductions from his Bureau of Prison account, has made thirteen payments of $25 to $35 each. These monies are in the Court Registry and will be forwarded to Camden. The law also gives Beaird credit for monies collected from assets associated with Rudolph.

[15] Originally, the Clerk allocated these monies to Crim. Case No. H-00-342, per order of Judge Hoyt. This allocation was the result of a clerical or communication error implementing Judge Hoyt's rulings at the supervised release revocation hearing. Camden is not a judgment creditor in that case. Rather, Camden's entitlement to restitution flows solely from the case at bar. The Clerk's Office will re-allocate the monies received on the Note and all payments to Camden to the case at bar, Crim. Case No. H-02-633.

[16] It is noted that Rudolph also has restitution obligations on Case No. H-00-342. Therefore, the sums forwarded by the Bureau of Prisons on his behalf shall be allocated to Criminal Case No. H-00-342, unless Judge Hoyt directs otherwise.

**Other Matters**.– Camden seems to argue that there is interest on the restitution that accrues at a "very high rate per annum," which makes the total now "due more than $500,000." It is far from clear that interest accrues on restitution obligations.[17] In the unlikely event that interest does accrue, the Court has not calculated the total accrued sum. It is premature to do so at this time.

## CONCLUSION

All monies collected by the Clerk of the Court from payments on the Note, Defendant Beaird's bond, as well as other monies paid by Beaird personally shall be credited to the restitution due in this case. The payments of restitution shall be forwarded to Camden. The Judgment Creditors, the Government, Beaird and Rudolph all are entitled to an accounting at least once a year of all funds received by the Clerk of the Court as restitution in this case. It is therefore

**ORDERED** that Joint Motion by Camden Capital Mortgage, Inc., Saxon Mortgage Inc., and Chicago Title Insurance Company to Modify or Amend Judgments [Doc. # 133] is **GRANTED in part** *nunc pro tunc*. Camden Capital Mortgage, Inc. is entitled to receive all restitution payments due under the final judgments in this case [Docs. # 83, # 84 and # 90]. The Clerk shall **not** forward restitution payments to Saxon Mortgage Inc. or Chicago Title Insurance Company without further order of this Court. It is further

---

[17] If Camden intends to claim interest on the restitution judgment, Camden will have to provide legal authority on point to support this contention. That matter is not ripe at this time and the Court will not address it.

**ORDERED** that the Clerk's Office shall **allocate to this case (Crim. Case No. H-02-633) all receipts** of interest and principal paid on the promissory note dated June 12, 2003 in the sum of $400,000, payable by "Church on the Rock Katy, Inc.," to "Kathy Rudolph, d/b/a Promise Land Development – Investment."  It is further

**ORDERED** that all potentially interested parties shall be given **at least once per year an accounting of funds** collected on this case by the Clerk of the Court and all payments made to Camden.  It is further

**ORDERED** that Restitution Judgment Creditor Camden Capital Mortgage, Inc.'s Motion for Release of Bond Funds of Rudy Rudolph [Doc. # 146] is **DENIED**.  It is further

**ORDERED** that Restitution Judgment Creditor Camden Capital Mortgage, Inc.'s Motion for Release of Bond Funds of John M. Beaird and Rudy Rudolph [Docs. # 165, # 166 is **GRANTED in part** as to Beaird's cash bond, which shall be **applied** to his restitution obligation in this case, and **denied** as to Rudolph.  It is further

**ORDERED** that Beaird's motions for accounting of restitution amounts received and declaratory judgment orders relating to same [Docs. # 168, # 170, # 190, and # 191] are **GRANTED in part** insofar as Beaird seeks an accounting from the Clerk of the Court concerning the monies received by the Court in payment of Defendants' restitution obligations in this case, and are **otherwise DENIED**.   It is further

**ORDERED** that failure of Beaird in the future to serve all parties, including Camden, with any document will result in the **striking** of that document and possibly denial with prejudice of the relief he seeks.  It is further

**ORDERED** that the Court Clerk shall file of record in this case a copy of the Order in Criminal Case No. H-00-342, signed by Judge Kenneth Hoyt on June 7, 2005 [Crim. Case No. H-00-342, Doc. # 137].  It is further

**ORDERED** that the Clerk of Court shall forward a copy of this Order to Saxon Mortgage, Inc. and Chicago Title Company, as well as to all parties.

SIGNED at Houston, Texas, this **17th** day of **April, 2006.**

_____
Nancy F. Atlas
United States District Judge